UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

LIONEL GIBSON,

        Plaintiff,

        v.                       CAUSE NO. 3:21-CV-837-JD-MGG

C. FOX and R. GROVE,

        Defendants.

## OPINION AND ORDER

Lionel Gibson, a prisoner without a lawyer, filed a complaint attempting to raise unrelated claims. ECF 1. In a prior order, the court offered Gibson the opportunity to divide these claims into separate lawsuits because the statute of limitations had since expired. ECF 7. In response, Gibson filed a notice saying he wished to proceed in this case with the claims raised in paragraphs 16 through 22 where he alleges five defendants did not protect him from attack by other inmates on November 15, 2019. ECF 8. The court granted that request and stayed this case pending screening. ECF 9. This screening order explains why Gibson states a claim against only two of the five defendants.

"A document filed *pro se* is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quotation marks and citations omitted). Nevertheless, under 28 U.S.C. § 1915A, the court must review the merits of a prisoner complaint and dismiss it if the action is frivolous or

malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief.

Gibson alleges Indiana Department of Correction Director Jack Hendrix approved the transfer of William O'Brian and Calvin Lyons to the Miami Correctional Facility from two different prisons in late 2018 or early 2019. He alleges Director Hendrix knew Gibson had to be held separate from them. He speculates Director Hendrix authorized the transfers to facilitate an attack on Gibson. Speculation is insufficient to state a claim because a complaint must contain sufficient factual matter to "state a claim that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Twombly*, 550 U.S. at 555 (quotation marks, citations and footnote omitted). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not shown—the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quotation marks and brackets omitted). Thus, "a plaintiff must do better than putting a few words on paper that, in the hands of an imaginative reader, *might* suggest that something has happened to her that *might* be redressed by the law." *Swanson v. Citibank, N.A.*, 614 F.3d 400, 403 (7th Cir. 2010) (emphasis in original).

This complaint does not contain facts from which it can be plausibly inferred that Director Hendrix intended harm to Gibson when he approved the transfer of O'Brian and Lyons nearly a year before Gibson was attacked. The Miami Correctional Facility is a large maximum security prison housing more than three thousand inmates in both dorms and cells.[1] The complaint does not contain facts from which it can be plausibly inferred that Director Hendrix dictated where any of these three inmates were housed in Miami Correctional Facility nor that it is inherently incapable of keeping specified inmates separate from each other.

Gibson alleges he notified Warden William Hyatte about his concerns when he heard O'Brien and Lyons had been transferred to the Miami Correctional Facility. Gibson does not say where at Miami either he or they were housed. He does not say when nor how he contacted the Warden. He does not say how he learned they were at Miami. He does not say what he told Warden Hyatte, but he says he deliberately did not initially contact Internal Affairs. He does not say when nor why he eventually contacted Internal Affairs, who he contacted, nor what he told them.

Under the Eighth Amendment, correctional officials have a constitutional duty to protect inmates from violence. *Grieveson v. Anderson*, 538 F.3d 763, 777 (7th Cir. 2008). But, "prisons are dangerous places. Inmates get there by violent acts, and many prisoners have a propensity to commit more." *Id*. Therefore, a failure to protect claim cannot be predicated "merely on knowledge of general risks of violence in a detention

---

[1] Indiana Department of Correction, Miami Correctional Facility, https://www.in.gov/idoc/find-a-facility/adult-correctional-facilities/miami-correctional-facility/.

3

facility." *Brown v. Budz*, 398 F.3d 904, 913 (7th Cir. 2005). "[T]he fact that an inmate sought and was denied protective custody is not dispositive of the fact that prison officials were therefore deliberately indifferent to his safety." *Lewis v. Richards*, 107 F.3d 549, 553 (7th Cir. 1997). Instead, the plaintiff must establish that "the defendant had actual knowledge of an impending harm easily preventable, so that a conscious, culpable refusal to prevent the harm can be inferred from the defendant's failure to prevent it." *Santiago v. Wells*, 599 F.3d 749, 756 (7th Cir. 2010).

> To establish deliberate indifference on the part of the defendants sued individually, Klebanowski needed to show that the officers acted with the equivalent of criminal recklessness, in this context meaning they were actually aware of a substantial harm to Klebanowski's health or safety, yet failed to take appropriate steps to protect him from the specific danger. Klebanowski testified during his deposition that he told officers twice on September 8 that he was afraid for his life and he wanted to be transferred off the tier. Those statements, and the officers' knowledge of the first beating, are the only pieces of evidence in the record that can assist Klebanowski in his attempt to show that the officers were aware of any risk to him. We have previously held that statements like those made by Klebanowski are insufficient to alert officers to a specific threat. *Butera*, 285 F.3d at 606 (deeming insufficient to establish deliberate indifference statements by a prisoner that he was "having problems in the block" and "needed to be removed"). In *Butera*, we deemed the inmate's statements insufficient to give notice to the officers because they did not provide the identities of those who threatened the inmate, nor state what the threats were. *Id.*

> The facts of this case make clear our reason for requiring more than general allegations of fear or the need to be removed. By Klebanowski's own testimony, the officers knew only that he had been involved in an altercation with three other inmates, and that he wanted a transfer because he feared for his life. He did not tell them that he had actually been threatened with future violence, nor that the attack on September 8 was inflicted by gang members because of his non-gang status. Without these additional facts to rely on, there was nothing leading the officers to believe that Klebanowski himself was not speculating regarding the threat he faced out of fear based on the first attack he suffered. This lack of

specificity falls below the required notice an officer must have for liability
to attach for deliberate indifference.

*Klebanowski v. Sheahan*, 540 F.3d 633, 639-40 (7th Cir. 2008) (footnote omitted). Here, the

complaint does not plausibly allege Warden Hyatte had actual knowledge of an

impending harm easily preventable.

Gibson alleges Officer B. Herrington came to his cell on November 13, 2019, and

spoke to his cellmate. He alleges Officer Herrington said staff had been told the inmate

in bed 439 would be killed. His cellmate told Officer Herrington that Gibson was in that

bed. He alleges Officer Herrington said he would speak to Gibson later. Gibson does

not say where he was when this conversation occurred. He does not say when his

cellmate told him about it. He alleges Officer Herrington did not speak to him before he

was attacked two days later. The constitution requires prison officials to protect inmates

from attack – it does not require they tell inmates about threats. Nevertheless, that is all

the complaint alleges Officer Herrington was assigned to do. Gibson does not allege

Officer Herrington knew who made the threat or had the authority to do anything other

than notify him about it. It is clear Officer Herrington was not the only prison official

who knew about the threat. "Bureaucracies divide tasks; no prisoner is entitled to insist

that one employee do another's job. The division of labor is important not only to

bureaucratic organization but also to efficient performance of tasks . . .." *Burks v.*

*Raemisch*, 555 F.3d 592, 595 (7th Cir. 2009). This complaint does not plausibly allege

Officer Herrington consciously, culpably refused to protect Gibson from attack by other

inmates merely because he did not return to personally tell him about the threat.

Gibson alleges "[o]n November 14, 2019, Plaintiff was warned by offender Lawrence Davis that Lyons and O'Brian had put a hit out on him and that his life was in danger." ECF 1 at 6. The next day, he told Casework Managers Ms. C. Fox and Mr. R. Groves about the threat to his life and his history with O'Brian and Lyons. He alleges they assured him he would be moved in a few hours. More than a few hours later, Gibson was attacked by six inmates and stabbed twice. The complaint plausibly alleges Casework Managers Fox and Groves had actual knowledge of an impending harm to Gibson that was easily preventable. Though it is possible they were not, the complaint plausibly alleges they consciously and culpably refused to prevent it.

Gibson asserts both federal claims under the Eighth Amendment as well as State claims under Indiana tort law. As explained, the complaint states an Eighth Amendment claim against two of the defendants. However, it does not support a State tort law claim against any of the defendants because they were all acting within the scope of their employment during the alleged wrongdoing. Therefore, State law claims against them personally are barred by the Indiana Tort Claims Act (ITCA). *See* I.C. § 34-13-3-5(b) "Under the Indiana Tort Claims Act, there is no remedy against the individual employee so long as he was acting within the scope of his employment." *Ball v. City of Indianapolis*, 760 F.3d 636, 645 (7th Cir. 2014). *See also Katz-Crank v. Haskett*, 843 F.3d 641, 648 (7th Cir. 2016) ("Indiana Tort Claims Act confers on public employees a broad immunity from suit for acts committed within the scope of their employment."). "If an alleged action is within the general scope of an individual's authority, it is authorized within the meaning of the Tort Claims Act, regardless of whether it was done

6

negligently or with improper motive." *Reiner v. Dandurand*, 33 F.Supp.3d 1018, 1033

(N.D. Ind. 2014) (quotations and citations omitted).

Finally, Gibson seeks both monetary damages and injunctive relief. He may

proceed on his Eighth Amendment claims for monetary damages, but not injunctive

relief. The complaint describes events in late 2019, but says nothing about what has

happened since. The complaint does not allege he is currently in danger. Therefore,

there is no factual basis for an injunctive relief claim.

For these reasons, the court:

(1) LIFTS the stay;

(2) GRANTS Lionel Gibson leave to proceed against Casework Managers Ms. C.

Fox and Mr. R. Groves in their individual capacities for compensatory and punitive

damages for failing to protect him from attack by other inmates on November 15, 2019,

in violation of the Eighth Amendment;

(3) DISMISSES all other claims;

(4) DISMISSES Jack Hendrix, B. Herrington, and William Hyatte;

(5) DIRECTS the clerk, under 28 U.S.C. § 1915(d), to request Waiver of Service

from (and if necessary, the United States Marshals Service to serve process on)

Casework Managers Ms. C. Fox and Mr. R. Groves at the Indiana Department of

Correction, with a copy of this order and the complaint (ECF 1);

(6) ORDERS the Indiana Department of Correction to provide the full name, date

of birth, and last known home address of any defendant who does not waive service if

it has such information; and

(7) ORDERS, under 42 U.S.C. § 1997e(g)(2), Casework Managers Ms. C. Fox and Mr. R. Groves to respond, as provided for in the Federal Rules of Civil Procedure and N.D. Ind. L.R. 10-1(b), only to the claims for which the plaintiff has been granted leave to proceed in this screening order.

SO ORDERED on January 28, 2022

/s/JON E. DEGUILIO
CHIEF JUDGE
UNITED STATES DISTRICT COURT